NUTOVIC & ASSOCIATES
Proposed Attorneys for Debtor
488 Madison Avenue, 16th floor
New York, New York 10022
(212) 421-9100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re                                                                                  (Chapter 11)

      33 W 127 LLC
                                                      Case No. 10-16518
                                       Debtor.
-------------------------------------------------------------X

**DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION PURSUANT TO 11 U.S.C. §§364 AND 365**

Preliminary Statement

This memorandum of law is submitted by 27 W 133 LLC (the "Debtor") in support of its motion (the "Motion") (i) pursuant to 11 U.S.C. § 364(d) for an order authorizing the Debtor to obtain super-priority post-petition financing with a priming lien superior, *inter alia*, to the mortgage of Amalgamated Bank and (B) pursuant to 11 U.S.C. § 365(a) for an order authorizing the Debtor to assume the pre-petition contracts of Padma Contracting Corp. ("Padma") and Tarantino Consulting Corp. ("Tarantino").

Facts

The facts relevant to the motion are more fully recited in the accompanying declaration of Gerald Migdol. The critical facts are as follows.

The Debtor's sole significant asset is a 5 unit residential building (the "Building") in Manhattan. The Building is encumbered by a mortgage in favor of Amalgamated Bank in the approximate amount of $1,275,000. The Debtor's principal, Jerry Migdol, has over 30 years experience in buying, selling and managing buildings in the New York City

1

residential real estate market. He appraises the current value of the Building at $1,400,000. The Debtor has entered into a contract (the "Sale Contract") with David Lai to sell the Building for $1,675,000, conditioned on the Debtor first converting the Building into a 4 unit building so that it will be eligible for financing at a reduced rate and with lower down payment requirements. The buyer has obtained a mortgage commitment based on the Building being a 4 unit property. Regardless of whether this particular buyer fulfills his obligations under the Sale Contract, Mr. Migdol estimates the conversion of the Building into a 4 unit property will increase its value by $200-300,000.

In order to meet these conditions the Debtor retained a contractor, Padma Contracting Corp. ("Padma"), to do the construction work and an architect, Tarantino Consulting Corp. ("Tarantino"), to design the plans and to get the necessary building approvals. The direct cost of the renovation totals $53,000. The Debtor, however, has no funds to undertake the necessary work or to make payment to Amalgamated Bank in the interim and now seeks permission to obtain post petition financing from B&G COULIE LLC (the "Lender") in order to pay Padma and Tarantino. The terms of the loan are set forth in a DIP Loan and Security Agreement (the "DIP Agreement"). As a condition to the proposed borrowing the Lender has required, *inter alia,* that its loan be secured by

> "(i) a continuing mortgage, security interest in and lien on the Property and its proceeds (herinafter, the "Collateral"), with priority over any and all liens or encumbrances on the Collateral including the mortgage and assignment of leases and rents granted to Amalgamated Bank by instruments dated December 6, 2006, and (ii) a chapter 11 administrative priority claim over all administrative claims other than fees payable to the U.S. Trustee's Office in the Bankruptcy Case pursuant to Section 1930(a)(6) of Title 28 of the United States Code."

The Debtor now seeks approval of the proposed borrowing pursuant to 11 U.S.C. §§364 (c)(1) and (d)(1). At the same time the Debtor seeks authority to assume its agreements with Padma and Tarantino pursuant to 11 U.S.C. §365 (a).

I. The Debtor's Application For Post-Petition
   Financing Should Be Approved

A debtor-in-possession has the rights, powers and duties of a trustee pursuant to 11 U.S.C. § 1107(a). The "business judgment" test is the standard applied by courts in determining whether to approve financing under 11 U.S.C. section 364. *See e.g. In re Blockbuster Inc.*, Chapter 11, Case No. 10-14997 (BRL), 2010 Bankr. LEXIS 4249 at pp. 16 and 18, (Bankr. S.D.N.Y. Sept. 24, 2010); *In re YL West 87th Holdings I LLC,* 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010).

Section 364(c)(1) of the Bankruptcy Code

That section provides:

"If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt --

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title.

To obtain financing under 11 U.S.C. §364(c)(1) courts may require the debtor to show:

"(1) whether the proposed financing is an exercise of sound and reasonable business judgment; (2) whether alternative financing is available on any other basis; (3) whether the proposed financing is in best interest of the estate and its creditors; (4) whether any better offers, bids, or timely proposals are before the court; (5) whether the proposed financing is necessary to preserve the assets of the estate, and is necessary, essential and appropriate for the continued operation of the debtor's business; (6) whether the terms of proposed financing are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender; and (7) whether the financing agreement was negotiated in good faith and at arm's length between debtor and proposed lender."

3

*Bland v. Farmworker Creditors*, 308 B.R. 109, 113-114 (S.D. Ga. 2003). The Debtor believes that application of these criteria, to the extent relevant to the facts of this case, demonstrate entitlement to relief requested under 11 U.S.C. §364(c)(1).

Section 364(d)(1) of the Bankruptcy Code.

>That section provides:
>
>"The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
>
>(A) the trustee is unable to obtain such credit otherwise; and
>
>>(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted."

The goal of adequate protection for purposes of the provision entitling a debtor to obtain financing secured by liens senior to all other interests is to safeguard the secured creditor from diminution in the value of its interests. *In re 495 Central Park Avenue Corp.*, 136 Bankr. 626 at 631; *In re Beker Industries Corp.*, 58 Bankr. 725, 736 (Bankr. S.D.N.Y. 1986). The existence of an equity cushion "seems to be 'the preferred test in determining whether priming of a senior lien is appropriate under section 364.' In re Strug-Div., LLC, 380 B.R. 505, 513 (Bankr. Ill. 2008)". *In re YL West 87th Holdings I LLC,* 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010).

Some courts have focused on whether the property in question will be increased in value by an amount greater than the priming lien. In a case markedly similar to the facts here, *In re 495 Central Park Avenue Corp.*, *supra,* 136 Bankr. 626, the debtor was seeking to obtain a DIP loan in the amount of $ 625,000, on a priming basis, to renovate a

property. *Id.* 136 B.R. at 629-30. The property was valued at between $ 2,200,000 and $ 2,250,000, subject to an existing mortgage held by a secured creditor, Hancock, in the principal amount of $ 3,950,000. *Id.* at 628-30. The appraisers on both sides agreed that the proposed renovation to the property would most certainly increase the value of the subject property, although they disagreed as to the amount of value increase. *Id.* at 630. The court ultimately concluded that the renovation will cause the subject property to increase in value by approximately $800,000. *Id.* The court found that "there is no question that the property would be improved by the proposed renovations and that an increase in value will result." *Id.* at 626, 631. In support of this, the debtor offered evidence that a new tenant was prepared to enter into a 15-year lease with the debtor, upon renovation of the property. *Id.* at 629. Since the projected increase in the property value exceeded the amount of the post-petition loan, the court found that Hancock's interest was adequately protected after the approval of the proposed $ 650,000 senior loan. *Id.* at 632.

Here, the secured creditor is adequately protected by the existence of an equity cushion before and after the proposed DIP loan is to be made; it is also adequately protected became the increase in value to the Debtor's building as a result of the renovations far exceeds the amount of the priming lien.

Because the Debtor can demonstrate more than adequate protection of Amalgamated Bank's property interest in the Building and has met all other requirements, the Court should authorize the loan from the Lender in accordance with the terms of the DIP Agreement.

II. Assumption of the Padma and Tarantino Contracts Should be Approved

Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

The "business judgment" test is the standard applied by courts in determining whether an executory contract or unexpired lease should be assumed. *See, e.g., In re Old Carco LLC (f/k/a/ Chrysler LLC)*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009); *see also Orion Pictures Corp. v. Showtime Networks, Inc.* (In re Orion Pictures), 4 F.3d 1095, 1099 (2d Cir. 1993); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("[m]ore exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially.") A court should approve the assumption of a contract under section 365(a) of the Bankruptcy Code if it finds that a debtor has exercised its sound business judgment in determining that assumption of an agreement is in the best interests of its estate. *See, e.g., Old Carco,* 406 B.R. at 196-97; *In re Child World, Inc.*, 142 B.R. 87, 89-90 (Bankr. S.D.N.Y. 1992); I*n re Ionosphere Clubs, Inc.*, 100 B.R. 670, 673 (Bankr. S.D.N.Y. 1989); *see also Sharon Steel Corp. v. National Fuel Gast Distrib. Corp (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989).

The Debtor has a sound business basis for seeking the assumption of the Padma and Tarantino contracts. The Debtor has a buyer for its building which will allow it to pay all creditors in full. In order to consummate the sale agreement the Debtor needs to convert two apartments into a single duplex unit. Assuming the Padma and Tarantino

6

contracts will allow the Debtor to complete the necessary work. Because the Debtor expects to pay all creditors in full it makes no sense to seek other contractors to finish any work already started since the Debtor would have to pay damages on any rejected contracts. Furthermore utilizing the contractors who have already started the job and are familiar with the project will allow the Debtor to meet its deadlines for work completion more easily.

Accordingly, the Debtor's application to assume the Padma and Tarantino contracts should be approved.

## Conclusion

The Motion should be granted and the Court should enter the proposed order.

Dated: New York, New York
      January 5, 2011

      NUTOVIC & ASSOCIATES
      Proposed Attorneys for the Debtor

By: *s/ Isaac Nutovic*
    Isaac Nutovic (IN-2076)
    488 Madison Avenue
    New York, N.Y. 10022
    (212) 421-9100